United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 22, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 04-70035

————————

JOSEPH ROLAND LAVE, JR.,

Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

————————

Appeal from the United States District Court
For the Northern District of Texas

————————

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Joseph Lave appeals the district court's denial of his habeas petition under 28 U.S.C. § 2254. He argues that his Sixth Amendment rights were violated under a retroactive application of the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), which held that testimonial, out-of-court statements are inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness about the statement. *Id.* at

The facts of this case were detailed in our previous opinion granting Lave a certificate of appealability. *See Lave v. Dretke*, 416 F.3d 372 (5th Cir. 2005). At Lave's capital murder trial, Officer Kevin Hughes, one of the state's witnesses, testified as to a statement by one of Lave's alleged accomplices. In the course of an interrogation, the accomplice told Officer Hughes that Lave committed the murder. A jury convicted Lave, and he was sentenced to death. The conviction and sentence were affirmed on direct appeal by the Texas Court of Criminal Appeals, and the Supreme Court denied his petition for a writ of certiorari. Lave filed for state habeas corpus relief, which was also denied.

Lave then sought federal habeas relief. The district court referred the case to a magistrate judge, who, on the day after *Crawford* was announced, issued a report and recommendation to deny the petition. In his objections to the magistrate's report, Lave argued for the first time that Officer Hughes's testimony violated his right to confrontation under the Sixth Amendment. The district court denied the petition, holding in part that *Crawford* does not apply retroactively. We granted a certificate of appealability on that single issue, reserving the question of whether the district court abused its discretion by not staying the proceedings so that Lave could return to state court and exhaust his state remedies as to his *Crawford* claim. *See Lave*, 416 F.3d at 382.

 "In reviewing a ruling on the merits of a habeas claim, the district court's findings of fact are reviewed for clear error; its conclusions of law, *de novo*." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). Under *Teague v. Lane*, 489 U.S. 288 (1989), courts should not apply a new rule of criminal procedure on collateral review unless it falls into one of two narrow categories. *See Beard v. Banks*, 542 U.S. 406, 416 (2004). The first category is for rules "forbidding punishment of certain

primary conduct" or for rules "prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Id.* (internal quotation and alteration omitted). The second category is for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 417 (quoting *O'Dell v. Netherland*, 521 U.S. 151, 157 (1997)). Lave argues that the rule announced in *Crawford* was new and that it falls within the second exception to the general rule that new rules of criminal procedure should not be applied retroactively to cases on collateral review.[1]

A case announces a new rule when it "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. Before *Crawford*, testimonial out-of-court statements could be presented to the jury if the court deemed them reliable. *Crawford*, 541 U.S. at 62 (describing the test established in *Ohio v. Roberts*, 448 U.S. 56 (1980)). As the government concedes, *Crawford* overruled *Roberts* as that case applies to testimonial statements. *See Bintz v. Bertrand*, 403 F.3d 859, 866 (7th Cir. 2005) ("It seems clear that *Crawford* was a clean break from the line of precedent established by *Roberts*."). Because *Crawford* changed the test for the admissibility of certain out-of-court statements, it imposes new obligations on state and federal courts and qualifies as a new rule of criminal procedure.

Lave asserts that the rule announced in *Crawford* implicates the fundamental fairness and accuracy of criminal proceedings. He stresses that in *Crawford*, the Supreme Court described the right to confrontation as a "bedrock procedural guarantee" and the admission of out-of-court testimonial statements as a "core confrontation violation[]." *See Crawford*, 541 U.S. at 42, 63. The

---

[1]     Lave makes no argument that *Crawford* falls into the first exception, which applies to rules that "are more accurately described as substantive rules not subject to *Teague*'s bar." *Beard*, 542 U.S. at 411 n.3 (citation omitted).

-3-

Court has explained, however, that the conclusion "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.'" *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (quoting *Teague*, 489 U.S. at 313). In other words, *Teague* analysis is at least partially comparative and requires assessing the risk of false conviction under the old rule against that risk under the new rule.

Lave asserts that the *Crawford* rule improves the accuracy of criminal proceedings because it excludes custodial statements by alleged accomplices unless the defendant has had a prior opportunity to cross-examine that alleged accomplice. He claims that, because such statements are highly unreliable and presumptively suspect, the rule uniquely enhances the accuracy of a trial. *See United States v. Flores*, 985 F.2d 770, 780 (5th Cir. 1993) (explaining that testimonial, accusatory statements made to non-undercover police are unreliable because the declarant has a strong incentive to shift blame and curry favor with prosecutors).

Lave's argument, however, does not show that the *Roberts* regime "so seriously diminishe[d] accuracy that there [was] an impermissibly large risk of punishing conduct the law does not reach." *Summerlin*, 542 U.S. at 355-56 (internal quotations and citations omitted). Out-of-court testimonial statements were not indiscriminately presented to juries under the *Roberts* regime. Indeed, they were inadmissible unless they bore adequate "indicia of reliability." *Roberts*, 448 U.S. at 66. Because only those statements that were deemed reliable could be admitted under *Roberts*, the fact that the class of statements as a whole is suspect does not demonstrate that *Roberts* created an impermissible risk of false conviction.

By its own terms, *Crawford* does not purport to announce a rule that increases the reliability of trial testimony. The opinion states, "the [Confrontation] Clause's ultimate goal is to ensure

-4-

reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." 541 U.S. at 61. As other circuits have held, the rule announced in *Crawford* does not assure greater accuracy because it bars admission of a statement to which it applies even when the statement is highly reliable. *See Murillo v. Frank*, 402 F.3d 786, 790 (7th Cir. 2005) ("The point of *Crawford* is not that only live testimony is reliable, but that the [S]ixth [A]mendment gives the accused a right to insist on live testimony, whether that demand promotes or frustrates accuracy."); *Mungo v. Duncan*, 393 F.3d 327, 336 (2d Cir. 2004) ("Because *Teague*'s test of a watershed rule requires improvement in the accuracy of the trial process overall, we conclude that *Crawford* is not a watershed rule . . . [and] should not be applied retroactively on collateral review.").

The rule announced in *Crawford* does not implicate the fundamental fairness and accuracy of criminal proceedings. While it may implicate the core of the confrontation right, it is not a rule without which there is an impermissibly high risk of false conviction. In so holding, we join the majority of other circuits that have held or suggested that *Crawford* should not be applied retroactively. *See McGonagle v. United States*, 137 Fed. Appx. 373 (1st Cir. 2005) (unpublished opinion); *Murillo*, 402 F.3d 786; *Dorchy v. Jones*, 398 F.3d 783 (6th Cir. 2005); *Mungo*, 393 F.3d 327; *Brown v. Uphoff*, 381 F.3d 1219 (10th Cir. 2004); *Evans v. Luebbers*, 371 F.3d 438 (8th Cir. 2004). *But see Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005).

Because *Crawford* does not apply to this case, the district court did not abuse its discretion by refusing to stay the proceedings while Lave presented his *Crawford* claim to a state habeas court. *See Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 1535 (2005) (explaining that a district court

should not stay proceedings to permit a habeas petitioner to exhaust state claims when such claims are "plainly meritless").  Accordingly, we AFFIRM the judgment of the district court.

DeMOSS, Circuit Judge, dissenting:

I would hold that *Crawford* is retroactive because it creates a watershed rule of criminal procedure that affects the fundamental fairness and accuracy of a criminal proceeding. *See Teague*, 489 U.S. at 311-12; *see also Banks*, 542 U.S. at 417. The majority notes the aspects of *Crawford*, particularly its break from the prior *Roberts* line, that make it a new rule. I part ways from the majority's conclusion that *Crawford* does not affect the fundamental fairness and accuracy of criminal proceedings. In my view, the *Crawford* majority opinion itself explains that the rule adopted therein affects fundamental fairness and accuracy of criminal proceedings, and as such, the rule satisfies the second *Teague* exception. The following quotation is just one of several establishing this point,

> To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence . . . but about how reliability can best be determined.

*Crawford*, 541 U.S. at 61.

Having declared the constitutional guarantee to protect the procedure deemed best-suited for the determination of a testimonial statement's reliability as to the truth, *Crawford* itself forecloses the conclusion that the accuracy of criminal proceedings is not centrally affected by adherence to the rule announced. Furthermore, the *Crawford* majority makes clear that fundamental fairness is crippled — to say nothing of affected — by the absence of *Crawford*'s rule requiring confrontation, that is, "the only indicium of reliability sufficient to satisfy constitutional demands." *Id*. at 69. Without confrontation in such cases, "the likelihood of an accurate conviction is *seriously* diminished." *See Schriro*, 542 U.S. at 352 (citing *Teague*, 489 U.S. at 311). As such, *Crawford* falls clearly within

*Teague*'s second exception permitting retroactivity. Accordingly, the district court erred in concluding that *Crawford* is not retroactive.